# U.S. COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1107

UNITED STATES OF AMERICA

v.

CHRISTIAN STEFAN WALTHER,
Appellant

―――――――――――――――――

Appeal from U.S. District Court, D.N.J.
Judge Madeline Cox Arleo, No. 2:23-cr-00993-001

Before: KRAUSE, FREEMAN, and ROTH, *Circuit Judges*
Submitted July 7, 2026; Decided August 4, 2026

―――――――――――――――――

NONPRECEDENTIAL OPINION[*]

KRAUSE, *Circuit Judge*.  Christian Walther, a German national, pleaded guilty to traveling into the United States with the intent to engage in illicit sexual conduct with girls under the age of 12, in violation of 18 U.S.C. § 2423(b).  At sentencing, the District Court varied upwards from the advisory Guidelines range of 108 to 135 months' imprisonment and imposed a 240-month sentence.  Walther challenges that sentence as both procedurally and substantively unreasonable.  Because his arguments are unconvincing, we will affirm his sentence.

---

[*] This is not an opinion of the full Court and, under 3d Cir. IOP 5.7, is not binding precedent.

# I. DISCUSSION[1]

## A. Procedural Reasonableness

A district court commits procedural error when it fails to calculate (or improperly calculates) the advisory Guidelines range, treats the Guidelines as mandatory, omits consideration of the 18 U.S.C. § 3553(a) factors, selects a sentence based on clearly erroneous facts, or declines to adequately explain the chosen sentence, including an explanation for any deviation from the Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). Because Walther did not raise any of his procedural objections with the District Court, we review them for plain error. *See United States v. Flores-Mejia*, 759 F.3d 253, 255-56 (3d Cir. 2014) (en banc). To satisfy the plain-error standard, Walther must establish that (1) the District Court erred; (2) the error was clear or obvious under the law at the time; and (3) the error affected his substantial rights, that is, the error affected the outcome of the proceedings. *See Johnson v. United States*, 520 U.S. 461, 467 (1997); *Greer v. United States*, 593 U.S. 503, 507 (2021). And even if these three conditions are satisfied, we will exercise our discretion to award relief "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 467 (citation modified).

Walther first argues that the District Court "all but ignored" the advisory Guidelines range when imposing his sentence, referring to it "only twice." Opening Br. 25. But the sentencing transcript makes clear that the District Court "properly considered the

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

Guidelines range as its starting point." *United States v. Merced*, 603 F.3d 203, 217 (3d Cir. 2010) (citation modified). The District Court began the hearing by stating that it had "reviewed the final presentence report" and the "comprehensive" filings from the parties "very carefully" and "spent a lot of time considering this case." App. 50, 52-53. It then correctly articulated the advisory Guidelines "range of 108 to 135" months, based on a "total offense level of 31" and a "criminal history category 1." App. 51. Later in the sentencing hearing, the District Court stated that it was "look[ing] at the [§] 3553 factors and, yes, the [G]uideline[s]" when crafting its sentence. App. 65. The District Court also correctly adopted the undisputed advisory Guidelines range in its written statement of reasons explaining the sentence. And it undoubtedly considered the Guidelines as its "starting point," *Merced*, 603 F.3d at 217 (citation modified), as evidenced by its statement that it was going to "vary upward," App. 67; *see also* App. 52 ("I reviewed everything very carefully and I'm inclined to make an upward variance in this case."). Thus, contrary to Walther's argument, the District Court did not issue its sentence "in a vacuum, divorced from any meaningful consideration of the Guidelines range." Opening Br. 25.

Walther next contends that the District Court failed to meaningfully consider "the need to avoid unwarranted sentence disparities" under § 3553(a)(6). The District Court was required to "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *Flores-Mejia*, 759 F.3d at 256 (citation modified). But Walther never raised the issue of unwarranted sentencing disparities in his sentencing memorandum or in his colloquy with the District Court at the time his sentence was imposed. Nor did he object after the District Court stated its reasons

3

from the bench. Consequently, there was no plain error in the District Court's failure to discuss any alleged disparity. *See id.*

Even assuming the District Court erred by not providing an in-depth discussion of the risk of unwarranted sentencing disparities, Walther cannot show a "reasonable probability that," had the District Court addressed the issue to his satisfaction, "the outcome of the proceeding would have been different" so as to affect his substantial rights. *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016) (citation modified). The District Court stated it was imposing the above-Guidelines sentence because of concerns about deterrence, reasoning that the presence of "aggravating factors" gave it "great pause, great concern about [Walther's] ability to ever enter society and be around children ever, ever again" or "to have a normal life ever again, because [his] thoughts and [his] actions are so contrary to normalcy." App. 64-65. The District Court concluded by characterizing this as the "rare case given the facts" where "an upward departure is warranted." App. 66. In light of these explanations, Walther has not shown a reasonable probability that further consideration of the risk of unwarranted sentencing disparities would have resulted in a shorter sentence.

Walther next argues that the District Court procedurally erred in sentencing him when it purportedly relied on his statement to undercover officers that he had sexually "assaulted a family member, a child, a young niece, and . . . touche[d] her privates when the opportunity present[ed] itself and when he's alone with her," as well as his acknowledgement to those officers that, "if the parents find out, 'I am dead.'" App. 53. Information "relied upon at sentencing must have sufficient indicia of reliability to support

4

its probable accuracy." *United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (citation modified).  Otherwise, such reliance would violate a defendant's "due process right to be sentenced based upon accurate information." *United States v. Nappi*, 243 F.3d 758, 763 (3d Cir. 2001).  On the other hand, mere references to arguably unreliable information are not problematic in and of themselves; they are considered "problematic only insofar as they indicate[] *actual reliance by the court* . . . when determining a sentence." *United States v. Ferguson*, 876 F.3d 512, 517 (3d Cir. 2017) (emphasis added).  So, to succeed, Walther must "bridge the gap between reference and reliance" by the District Court.  *Id.*  On this sentencing transcript, he cannot do so.

Walther points to *Berry* where the district court had used the fact of prior arrests without convictions to "read[] between the lines," 553 F.3d at 277, and had necessarily assumed the defendants' guilt to conclude their "criminal history points" neither "reflect[ed] quite adequately[] the seriousness of their criminal exposure in the past" nor their propensity to commit future crimes, *id.* at 279.  Here, in contrast, the District Court did not reach a definitive conclusion whether Walther had, in fact, assaulted his niece but rather attached significance to the fact the *he claimed to have done so*.  True, the District Court repeated the statement Walther made to undercover officers, but it also acknowledged defense counsel's argument at sentencing that those statements were mere puffery and Walther's own assertion that he had never touched a child in his life.  And it then observed that these statements were simply irreconcilable:  Either the District Court had to "ignore" Walther's own statement to the undercover officers, even if the statement

5

had "an element of truth to it," App. 61, or it had to accept the statement that he never inappropriately touched a child.

Rather than adopt a definitive position whether Walther was "lying then or lying now about having never touched a child," the District Court turned to the "indisputabl[e]" facts to determine its sentence, implying that the veracity of Walther's statement regarding his niece remained in dispute. App. 61. Those indisputable facts included two child sexual abuse material videos Walther sent to the undercover officers, his statements expressing a daily desire to sexually assault 8-to-12-year-old girls, and the graphic nature of his intended criminal acts when he arrived in New Jersey. Thus, read in context, to the extent the District Court referenced Walther's statement to the undercover officers, it was to show— regardless of "whether or not" the underlying substance of the statement about his niece "was true," App. 64—his stated belief that he would be "dead" if discovered by his niece's parents, which reflected that he understood that what he planned to do in New Jersey was wrong and that he did so anyway, App. 61.[2]

---

[2] At the beginning of the sentencing hearing, the District Court started to say that "it's the fact that he did it," App. 53, but it immediately corrected itself to clarify that its focus was the fact of the statement itself, rather than its truth, stating more precisely that "*he told them in his chats that he assaulted a family member, a child, a young niece*," App. 53 (emphasis added). Our concurring colleague draws a different inference from this portion of the sentencing transcript. *See* Concurring Op. 4. The conclusion we reach, however, does not rest on this sentence fragment alone; our precedent requires that we review the sentencing transcript "as a whole." *United States v. Ausburn*, 502 F.3d 313, 321 (3d Cir. 2007). Doing so demonstrates that the sentence fragment we and our concurring colleague read differently was uttered before the parties had opportunities to allocute and contextualize Walther's statement for the District Court. From that point forward, the District Court referred to the statement when imposing its sentence as a means of demonstrating Walther's knowledge and intent to harm minors in New Jersey, regardless of "whether or not" the statement "was true." App. 64. In our view, those references, read in the context

Accordingly, Walther has shown that the District Court referenced his statements about his niece but not that it improperly relied on those statements, so his claim of a plain due process violation is not viable. *See Ferguson*, 876 F.3d at 517.

## B. Substantive Reasonableness

Walther also contends that his 240-month sentence is substantively unreasonable because "no reasonable court would have varied upwards so substantially for the reasons the [District] Court identified."[3] Opening Br. 37. Walther has not exceeded the high threshold for demonstrating that his sentence is outside the range of reasonable sentences available to the District Court based on the record before it.

On review of a sentence's substantive reasonableness, we consider "whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc) (citation modified). Our review is "highly deferential," *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007), and "reasonableness is a range, not a point," *United States v. Kluger*, 722 F.3d 549, 567 (3d Cir. 2013) (citation modified). Even if we disagree with the sentence imposed, that disagreement alone is not a basis for vacating the sentence under our deferential standard of review. *See Concepcion v. United States*, 597 U.S. 481, 501 (2022).

of the entire sentencing proceeding, do not demonstrate "actual reliance by the court." *United States v. Ferguson*, 876 F.3d 512, 517 (3d Cir. 2017).

[3] Because Walther advocated before the District Court for a sentence shorter than the one imposed, he has preserved his challenge to his sentence's substantive reasonableness. *See Holguin-Hernandez v. United States*, 589 U.S. 169, 174-75 (2020).

Considering the "totality of the circumstances" surrounding Walther's sentencing, *Tomko*, 562 F.3d at 567, we cannot say that no reasonable sentencing court would have acted as the District Court did here. The District Court explained why and how the aggravating factors in this case were significant and led it to impose an otherwise "rare" above-Guidelines sentence. App. 66. It emphasized the seriousness of the offense—including the "sick, sick . . . videos" Walther sent to the undercover officers, App. 61—and it was equally pained by the substance of some of the conversations with the undercover officers that preceded Walther's trip to New Jersey to procure sex with a minor girl, *see, e.g.*, App. 63-64 (referring to Walther's chats where he "made clear" that he "took joy in the suffering and the pain and the sexual exploitation of children" and that he wanted to use "a little force" on them and "do it daily" if he had "access"); App. 52 (discussing Walther's goal of inflicting "harm to a child" by "travel[ling] into our country from Germany with the expressed purpose of sexually assaulting a young girl that he had prearranged through a number of chats and was willing to pay for that illegal encounter"); App. 65 (explaining how Walther had an "uncontrolled urge" to harm children "every day" all while knowing "it's wrong"). As the District Court summarized: "These are the kind of aggravating factors that g[a]ve [it] great pause that [Walther] will ever be able to return to normalcy because they were so graphic, they were so uncontrollable." App. 64.

The District Court also explained why it was extremely concerned that the sentence imposed be sufficient to provide deterrence and protect the public from further crimes. *See* 18 U.S.C. § 3553(a)(2)(B), (C). Specifically, the District Court had "great concern" that Walther could "ever enter society and be around children ever, ever again." App. 65. And

8

even though Walther had no criminal history, that factor was insufficient to change the District Court's calculus that a rare above-Guidelines sentence was necessary.

In short, the District Court acted within its substantial discretion to impose a 240-month sentence and adequately explained why "[a] lengthy prison sentence was clearly warranted in order to prevent and deter [Walther] from reoffending, as well as to provide adequate punishment for his conduct." *United States v. King*, 454 F.3d 187, 195 (3d Cir. 2006). Considering the totality of the circumstances—including Walther's offense conduct, the characteristics of his online communications, and the need to deter criminal activity and protect the public—under the deferential standard we must apply, we cannot say that no reasonable sentencing court would have imposed the same sentence on these facts. *See Tomko*, 562 F.3d at 568.

## II. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.

FREEMAN, J., *Circuit Judge*, concurring.

I agree with the majority's resolution of Walther's substantive reasonableness claim. I also agree that the District Court considered the applicable Guidelines range when it imposed Walther's sentence. But, in my view, the District Court imposed a large upward variance in reliance on Walther's unproven statements about assaulting his niece. Doing so was a procedural error, albeit not a plain one.

Only Walther's emailed statements to an undercover agent indicate that Walther assaulted his niece. The Probation Office reproduced the statements in the Presentence Investigation Report (PSR), but it did not seek to verify the truth of the statements. Indeed, in the section describing Walther's family, the PSR identifies one sibling—a half-sister whom Walther does not see frequently—and says it is "unknown" whether the "niece" Walther referenced is that sibling's child. And the government did not introduce any evidence during the sentencing hearing to substantiate that Walther even *has* a niece, let alone that he assaulted her. So Walther's statements are the only evidence that the assaults actually occurred.[1]

Walther's statements would not suffice to secure his conviction for assaulting his niece (even if jurisdiction were no obstacle). That is because "[i]t is a settled principle of

---

[1] The government argues that Walther admitted the truth of his statements about his niece when he did not object to the statements' inclusion in the PSR. Not so. By not objecting to the PSR, Walther admitted the factual allegations therein. *See United States v. Ashe*, 130 F.4th 50, 55 n.3 (3d Cir. 2025). But the PSR only alleges what Walther wrote over email; it does not allege that Walther was being truthful when he wrote those words. *Cf. United States v. Cano*, 981 F.3d 422, 428 (5th Cir. 2020) ("The presentence report does not verify the truth of [the defendant's] allegation that he turned himself in, it merely repeats his allegation.").

1

the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *Wong Sun v. United States*, 371 U.S. 471, 488–89 (1963). So an admission or confession to a crime "must be corroborated by 'substantial independent evidence which would tend to establish the trustworthiness of the statement'" before it can serve as a basis for a conviction. *Gov't of V.I. v. Harris*, 938 F.2d 401, 410 (3d Cir. 1991) (quoting *Opper v. United States*, 348 U.S. 84, 93 (1954))); *accord United States v. Abu Ali*, 528 F.3d 210, 234 (4th Cir. 2008) (explaining that "courts require [such] corroboration to prevent confessions to crimes never committed and 'convictions based upon untrue confessions alone'" (quoting *Warszower v. United States*, 312 U.S. 342, 347 (1941))).

Of course, the government does not seek to convict Walther for the purported assaults on his niece. But uncorroborated statements must be closely scrutinized in sentencing proceedings, too. *Cf. United States v. Miele*, 989 F.2d 659, 664 (3d Cir. 1993) (holding that hearsay statements must bear "sufficient indicia of reliability . . . to assure fact finding reliability at sentencing" and that "this standard should be applied rigorously" (citation modified)). After all, "under the Due Process Clause, a defendant cannot be deprived of liberty based upon mere speculation." *United States v. Ferguson*, 876 F.3d 512, 515 (3d Cir. 2017) (citation modified). That means "unsupported speculation about a defendant's background . . . cannot support increasing his/her sentence in the absence of adequate proof of criminal activity." *Id.* (citation modified); *cf. Miele*, 989 F.2d at 664–65 (vacating a sentence where the court relied on a hearsay statement absent sufficient corroborating evidence).

Here, no independent evidence established the trustworthiness of Walther's statements.[2] And the context of those statements—an email exchange with someone professing to facilitate illicit sexual activity with minors—reduces their reliability so much that they amount to mere speculation.

As the Second Circuit observed in an analogous case, "[t]he contents of internet chats alone are not the type of reliable information" that can support an upward departure from a Guidelines range. *United States v. Weisser*, 417 F.3d 336, 351 (2d Cir. 2005) (citation modified). The defendant there had internet chats with an undercover agent and said he had had a sexual relationship with a minor. *Id.* But nothing corroborated those statements, and at sentencing the defendant claimed they were untrue. *Id.* The Second Circuit explained that—absent indicia of reliability such as a foreign conviction, a civil adjudication, or testimony of government agents or informants—the internet chats could not be used to increase the sentence. *Id.*

Here, too, nothing corroborated Walther's emailed statements. So it violated due process for the sentencing court to rely on them to increase his sentence. *Cf. United States v. Berry*, 553 F.3d 273, 280 (3d Cir. 2009) (holding that information lacking "sufficient indicia of reliability to support its probable accuracy" cannot form the basis

---

[2] The PSR says that Walther sent the undercover agent a photograph of a young girl wearing a ballerina outfit and claimed the girl was his niece. But no one verified the girl's identity, and the photograph does not increase the reliability of Walther's statements. *Cf. United States v. Stewart*, 462 F.3d 960, 963–64 (8th Cir. 2006) (concluding that nine photographs showing the victim nude or partially nude, including photographs of the defendant inappropriately touching the victim, supported the reliability of defendant's internet chat room comments describing his abusive conduct).

for an increased sentence (citation modified)); *Ferguson*, 876 F.3d at 517 (holding that references to unreliable information are "problematic only insofar as they indicate[] actual reliance by the court . . . when determining a sentence").

In the majority's view, the District Court did not rely on Walther's emailed statements when it imposed the upward variance. I read the record differently.

Early in the sentencing hearing, the District Court previewed why it was inclined to impose an upward variance. Its comments included the following:

> So it's not just the defendant's conduct, it's—it's not just his own sick pleasure, it's his pleasure in hurting a child. It is his comment that he would do it daily if he had access. And, finally, *it's the fact that he did it*—he told them in his chats that he assaulted a family member, a child, a young niece, and that he touches her privates when the opportunity presents itself and when he's alone with her, and he says, yes, if the parents find out, I am dead.

App. 53 (emphasis added). The majority says the District Court immediately corrected itself after referring to "the fact that he did it." Maj. Op. 6 n.2. But I see no correction. As I read the passage quoted above, the District Court merely identified the source of the information about assaults on the niece: Walther's correspondence with a law enforcement agent.

After the District Court made these remarks, Walther's counsel pointed out the lack of "independent proof" of the assaults and argued that Walther was merely "puffing" in his email to the agent. App. 57. Then, during allocution, Walther claimed that he never touched a child inappropriately in his life. The District Court responded:

> [L]et me just begin with something you said, that I never touched a child in my life. *For me to accept that statement*

4

*would be for me to ignore your own words* with your niece and that it was some kind of exaggeration or bragging. *To me it had an element of truth to it.* The fact that you said you kissed her, you touch her when you're alone with her, you didn't say raped her, you touched her, and that they'd kill you if—you'd be dead, I think was your words, if they knew what you were doing.

App. 61 (emphases added). When the District Court said Walther's words reproduced in the PSR had "an element of truth," it made a finding of fact about whether Walther was "lying then or lying now about having never touched a child." App. 61. And it reiterated that finding when it acknowledged "that sometimes people brag when they communicate on the internet, but *I also know* that *there is a ring of truthfulness to what you're saying*. . . . This was your words and your words made clear that you took joy in the suffering and the pain and the sexual exploitation of children." App. 63 (emphases added).

The District Court then said that it would use Walther's purported admission that he assaulted his niece as one of the "aggravating factors" supporting Walther's sentence. App. 64. And it specified that Walther's emailed statements to the agent factored into its selection of a sentence:

> ["]I never touched a child before.["] You stood up in court today. Well, you told the undercover you did and we know you had images that were grotesque that you shared with them. So again, *those are things that I take into account when I decide the appropriate sentence.*

App. 65 (emphasis added).

To summarize, the District Court (1) repeatedly referenced Walther's emailed statements about assaulting his niece, (2) rejected Walther's denial by saying the emailed

5

statements had a ring of truth and that "he did it," and (3) confirmed that it used the emailed statements to select the appropriate sentence. This record demonstrates actual reliance. *See Ferguson*, 876 F.3d at 517 ("[Actual] reliance need not be made explicit in order to constitute error."). So the sentence violates Walther's due process rights.

Nonetheless, Walther did not object to this procedural error, and I cannot say the error is clear or obvious. *See Johnson v. United States*, 520 U.S. 461, 467 (1997). We have made clear that a sentencing court cannot rely on a bare arrest record to increase a sentence. *Berry*, 553 F.3d at 281–84; *United States v. Mateo-Medina*, 845 F.3d 546, 551–54 (3d Cir. 2017); *United States v. Mitchell*, 944 F.3d 116, 120–22 (3d Cir. 2019). But only the Second Circuit has said a defendant's uncorroborated inculpatory statements are insufficiently reliable to support an increased sentence, and that court did so in the context of invalidating an upward departure under the pre-*Booker* Sentencing Guidelines. *See Weisser*, 417 F.3d at 351. Because the procedural error was not plain, I concur in the judgment affirming the sentence.